NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GONZALO CORPUS,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2023-1861

---

Petition for review of the Merit Systems Protection Board in No. DA-1221-22-0029-W-2.

---

Decided: April 10, 2024

---

GONZALO CORPUS, San Antonio, TX, pro se.

REBECCA SARAH KRUSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before TARANTO, STOLL, and STARK, *Circuit Judges*.

PER CURIAM.

Mr. Gonzalo Corpus appeals a decision of the Merit Systems Protection Board ("Board") denying his request for corrective action under the Whistleblower Protection Act ("WPA") and the Whistleblower Protection Enhancement Act ("WPEA").  We affirm.

I

A

Mr. Corpus was a medical instrument technician employed at a medical facility operated by the Department of Veterans Affairs ("VA").  Medical instrument technicians are required to perform procedures and examinations on patients.  "Physical requirements for the technician position include frequent standing, walking, bending, and reaching," and the technicians "are required to wear lead-lined clothing that weighs 20 pounds during all procedures, must be able to lift and/or move over 50 pounds, and must have good manual dexterity and keyboarding skills."  S.A. 5.[1] (internal citation marks omitted).  At the medical facility, Mr. Corpus was assigned to the Cardiac Catheterization Lab ("CCL"), which required him to perform, under a physician's direction, invasive and noninvasive diagnostic tests of patients' pulmonary and cardiovascular systems.

Between November 2019 and January 2020, Mr. Corpus' supervisors became aware of reports from various staff members that he was experiencing seizure-like episodes while on duty.  The staff members reported that because of these episodes, Mr. Corpus had needed to be taken to the emergency room on more than one occasion.  On January 7, 2020, Mr. Corpus was diagnosed with psychogenic non-epileptic spells (the "Condition"), which is a psychological

---

[1]    "S.A." refers to the supplemental appendix filed with the government's response (ECF No. 15).

condition that manifests physically as seizure-like episodes.

As a result, on January 15, 2020, the deputy director of patient care services removed Mr. Corpus from direct patient care, citing "concerns regarding [his] fitness for duty related to multiple accounts of inability to move extremities, blank stares, apparent disorientation, and difficult[y] in forming words." S.A. 43. She added that the removal was also due to "potential safety risks for both [Mr. Corpus] and . . . veteran[s]." S.A. 43. The deputy director indicated that "[d]uties will be assigned by [Mr. Corpus'] supervisor, . . . or designee." S.A. 43. Later that month, one of Mr. Corpus' supervisors requested that he appear for a fitness for duty examination ("FFDE") scheduled for February 5, 2020.

Mr. Corpus submitted himself to this FFDE, and the doctor who performed it recommended that he undergo a psychological evaluation to determine the extent of his impairment. After that evaluation, the doctor concluded that Mr. Corpus' ability to perform the essential elements of his position was "questionable." S.A. 47. Thus, the examining doctor, noting the "safety sensitive nature of [Mr. Corpus'] position," recommended that the medical facility convene a physical standards board ("PSB"). S.A. 47. The PSB was convened on May 7, 2020. It determined that Mr. Corpus was not able to safely perform his duties, given that his condition caused "involuntary loss of control of cognitive and motor functions which could pose a serious risk of harm to patients and [his] fellow coworkers." S.A. 48.

On June 15, 2020, Mr. Corpus was notified that the deputy director was proposing to remove him from his position. Mr. Corpus responded that he was interested in applying for disability retirement instead of being removed. Before he could retire, however, Mr. Corpus became seriously ill with COVID-19 and was unable to work until August 20, 2020.

After Mr. Corpus returned to work, the director of the medical center, who was responsible for evaluating the proposed removal, was informed by the human resources department that Mr. Corpus was interested in reassignment to another position in lieu of removal. Mr. Corpus, however, ultimately decided that he was not interested in reassignment. Nevertheless, Mr. Corpus' supervisor reassigned him to a temporary position with duties that did not involve direct patient care and later to a position of Medical Support Assistant. Mr. Corpus refused to sign the reassignment notice.

Mr. Corpus subsequently filed an appeal at the Board contending that he had been involuntarily reassigned to a lower-grade position. The VA responded by withdrawing both the notice of reassignment and the notice of proposed removal, and Mr. Corpus then withdrew his appeal. The Board dismissed the appeal on January 14, 2021. Meanwhile, the human resources department contacted Mr. Corpus, reiterating the finding that he was unable to perform his duties and offering to find him reasonable accommodation.

On March 15, 2021, Mr. Corpus participated in a follow-up neurological examination. The examining doctor, a different person than the doctor who had conducted the first FFDE, concluded that he could resume his duties without any limitation. Less than a month later, however, Mr. Corpus' representative informed the VA that Mr. Corpus was experiencing serious medical problems as a direct result of COVID-19. The representative also stated that Mr. Corpus had suffered a convulsion in the VA parking lot and was then taken to the emergency room.

Around this time, the Department of Labor ("DOL") Office of Workers' Compensation Programs ("OWCP") accepted Mr. Corpus' claim for traumatic injury due to COVID-19. The OWCP determined that Mr. Corpus had an injury that was proximately caused by employment

under, and was compensable pursuant to, the American Rescue Plan Act of 2021. On May 3, 2021, a VA representative contacted Mr. Corpus to follow up on the reasonable accommodation process and potential reassignment. Mr. Corpus (through his representative) advised the VA that his health issues were being addressed by the OWCP process, which he asserted had "jurisdictional control" over his claim.

On June 8, 2021, the VA requested that Mr. Corpus appear for a second FFDE, due to reports of him experiencing "difficulty speaking, hand tremors, disorientation, and appearing unable to properly perform [his] duties." S.A. 54. Mr. Corpus responded on June 15, 2021 with a letter ("June 2021 Letter") stating that his symptoms were due to COVID-19. He further espoused the view that because his injury was accepted by DOL, he was now entitled to "benefits and protections." S.A. 57. Mr. Corpus further asserted in the June 2021 Letter that the VA was "coercing" him "with threats" and "forcing" him to "violate federal statues, HIP[A]A, DOL/OWCP, [and] VA Directives" and disclose his "private medical information" that he did "not want to release." S.A. 57. The same letter added that he was being "coerced" to submit to a physical examination against his will. S.A. 57. The next day, June 16, 2021, Mr. Corpus's representative contacted the Office of Inspector General ("OIG") hotline ("2021 Hotline Report), making similar allegations and raising similar concerns.

Mr. Corpus arrived as requested at the specified location for the second FFDE on June 17, 2021. However, he refused to complete the required examination forms and did not consent to the exam. Thus, the scheduled FFDE did not occur.

On July 16, 2021, the deputy director proposed to remove Mr. Corpus for failure to submit to a directed examination. The proposed removal notice stated that Mr. Corpus' position was critical and directly affected patient

care. His failure to participate in the examination, the notice explained, presented a safety issue and had a negative effect on the efficiency of the agency.

B

On July 30, 2021, Mr. Corpus filed a whistleblower complaint with the Office of Special Counsel ("OSC"), alleging that his proposed removal was in retaliation for his protected disclosures and protected activities. On October 15, 2021, the OSC notified Mr. Corpus that it was closing its inquiry into his complaint and advised him of his right to seek corrective action from the Board via an individual right of action ("IRA") appeal.

On October 19, 2021, the VA issued a decision to remove Mr. Corpus from employment. The effective date of the removal was set as October 25, 2021. On October 21, 2021, before the effective date of his termination, Mr. Corpus filed an IRA appeal with the Board.

C

On February 17, 2022, the administrative judge ("AJ") assigned to Mr. Corpus' Board appeal issued an order regarding jurisdiction. In the order, the AJ explained that, "[u]nder the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before the Office of Special Counsel (OSC) and makes [certain] nonfrivolous allegations." S.A. 79. The AJ concluded that Mr. Corpus had exhausted the OSC process with respect to his putative disclosure and activity as set out in the June 2021 Letter and the 2021 Hotline Report.

The AJ found, however, that Mr. Corpus filing of an appeal with the Employee's Compensation Appeal Board ("ECAB") within DOL/OWCP was not a protected activity under the WEPA. Furthermore, while Mr. Corpus had exhausted the OSC process for his claim that the VA retaliated against him by requesting the second FFDE, the AJ

found it still lacked jurisdiction for this claim because the request (dated June 8, 2021) *preceded* the June 2021 Letter (which was dated June 15, 2021).

The AJ's order noted that, to the extent Mr. Corpus contended he had engaged in other protected disclosures or activities or suffered other personnel actions, he was required to file a statement describing them by February 24, 2022. The AJ noted he had not received any such statement. Thus, the AJ limited the scope of the appeal to the disclosures and personnel actions relating to the June 2021 Letter and the 2021 Hotline Report.

On April 20, 2023, the AJ issued an initial decision denying Mr. Corpus' request for corrective action. In the decision, the AJ found the June 2021 Letter was not a protected disclosure because Mr. Corpus "did not articulate, nor [was the AJ] able to discern, a reasonable belief that the [second] FFDE violated any law, rule, or regulation." S.A. 23. The AJ concluded the 2021 Hotline Report was a protected activity because, by law, disclosing information to the Inspector General is a protected activity, regardless of its content.

The AJ also found that the proposed removal was a covered personnel action, and that the 2021 Hotline Report was a contributing factor in the proposed removal. The AJ concluded, however, that the VA showed by clear and convincing evidence that it would have proposed to remove Mr. Corpus even absent the protected activity. Thus, the AJ denied Mr. Corpus' request for corrective action.

The AJ also held in the initial decision that Mr. Corpus had failed to exhaust the OSC process with respect to his alleged reporting of sexual harassment and correspondence with a congressman regarding various issues, including the first FFDE. The AJ also determined that Mr. Corpus' allegations of retaliation for exercising a right protected under Title VII did not come within the scope of an IRA appeal.

The initial decision became final on May 25, 2023. Mr. Corpus timely appealed. We have jurisdiction under 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

## II

At the Board, "[a]n employee who believes he has been subjected to illegal retaliation must prove by a preponderance of the evidence that he made a protected disclosure that contributed to the agency's action against him." *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1365 (Fed. Cir. 2019). "If the employee establishes this *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. § 1221(e).

In reviewing the Board's decision, we must "hold unlawful and set aside any agency action, findings, or conclusions found to be – (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

In evaluating whether substantial evidence supports the Board's finding that the VA had shown by clear and convincing evidence that it would have taken the same personnel action even absent the protected activity, we consider the *Carr* factors, which are:

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

## III

The AJ found that Mr. Corpus engaged in at least one protected activity (the 2021 Hotline Report), that the proposed removal was a covered personnel action, and that his protected activity was a contributing factor in the proposed removal. These findings are favorable to Mr. Corpus and the government does not challenge them in this appeal. Thus, we focus our analysis on the AJ's findings that are unfavorable to Mr. Corpus.

## A

The AJ concluded that the VA showed by clear and convincing evidence that it would have taken the same personnel action (the proposed removal) even absent the protected activity. Substantial evidence supports this factual conclusion as well as the AJ's underlying factual findings with respect to each of the *Carr* factors.

Regarding the first *Carr* factor – "the strength of the agency's evidence in support of its personnel action" – the AJ concluded that the VA presented "very strong evidence in support of its proposal to remove" Mr. Corpus. S.A. 31. The AJ explained that "[t]he agency articulated legitimate concerns about [his] ability to perform the duties of his position without risk to himself or patients." S.A. 31 (discussing "continued and unpredictable nature of [Mr. Corpus'] seizure-like episodes" and failure to "allay those concerns").

The AJ also considered Mr. Corpus' violation of the VA's regulation and policy as set forth in the agency's handbook, concluding that the VA was authorized to take disciplinary action against Mr. Corpus for his failure to cooperate. Specifically, the AJ noted that, under the regulation and the VA's policy, the agency was permitted to order medical examinations, and Mr. Corpus' failure to submit to one was a valid basis for disciplinary or adverse action. We conclude that the AJ's determination that the first *Carr* factor "weighs heavily in favor of the agency" is supported by substantial evidence. S.A. 33.

The AJ found the evidence with respect to the second *Carr* factor – "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision" – was "mixed." S.A. 33. The AJ acknowledged that the deputy director and the director "may have had a motive to retaliate because [Mr. Corpus'] complaints about the second FFDE were directed at the facility generally, which could reflect negatively on higher-level managers." S.A. 34. The AJ further noted that these two were identified as the "wrongdoers" in Mr. Corpus' OIG complaint. S.A. 34. However, given the deputy director's and the director's sworn declarations, attesting that Mr. Corpus' protected activities had no bearing on their decisions with respect to removal, the AJ had substantial evidence for the finding that the second *Carr* factor weighed "at most, slightly in the appellant's favor." S.A. 34.

The AJ found the third *Carr* factor – "evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated" – was not significant in this case. This was a reasonable conclusion given that there was "no evidence of record concerning similarly situated employees," as the AJ noted. S.A. 34.

After weighing the three *Carr* factors, the AJ concluded that the "agency met its high burden of clear and

convincing evidence" because "the agency's evidence created a firm belief it would have proposed the appellant's removal even absent his protected activity." S.A. 34. Moreover, "[t]he agency provided ample support, in the form of both documentary evidence and sworn declarations, for the proposed action." S.A. 34. These are reasonable conclusions supported by substantial evidence of record, as identified by the Board and summarized throughout this opinion.

B

We have considered Mr. Corpus' remaining arguments, though they are difficult to discern, and find them unpersuasive. We briefly discuss several of them.

First, Mr. Corpus suggests that the AJ failed to consider certain facts. *See* Pet. Br. at 1-8. While we have no basis to assume the AJ overlooked any evidence, *see generally Snyder v. Dep't of the Navy*, 854 F.3d 1366, 1373 (Fed. Cir. 2017), we fail to see how the allegedly-ignored evidence could render the AJ's decision arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with law. Many of the facts Mr. Corpus identifies are entirely irrelevant to any issue in dispute. *See, e.g.,* Pet. Br. at 8 (failing to show relevance of Mr. Corpus' two appeals being consolidated and that he is 100% disabled and being treated for Gulf War syndrome). Others were clearly considered by the AJ. *Compare, e.g.*, Pet. Br. at 6 (identifying Mr. Corpus' filing of appeal with ECAB), *with* S.A. 2 n.1 (discussing this fact and determining it was not protected activity). Still others relate to facts with respect to which the AJ found Mr. Corpus failed to exhaust his administrative remedies. *See* S.A. 27-28 & n.14 (Title VII and sexual harassment allegations); S.A. 28 (communication with congressman about first FFDE).

Second, Mr. Corpus argues that the requirement he appear for the second FFDE (which was the subject of the June 2021 Letter as well as the 2021 Hotline Report) was

unjustified because, during the prior neurological examination, he had been cleared to resume his duties. *See* Pet. Br. at 11. However, substantial evidence supports the AJ's conclusion that Mr. Corpus "has not established that a disinterested observer with knowledge of these facts would reasonably believe the agency was required to defer to" conclusions of a particular doctor, "or that the agency violated a law, rule, or regulation by requiring him to undergo another examination to assess potential limitations." S.A. 24.

Third, Mr. Corpus challenges the AJ's reliance on the sworn statements of agency personnel. *See* Pet. Br. at 17-18. The "credibility determinations of an administrative judge are virtually unreviewable on appeal." *Bieber v. Dep't of the Army,* 287 F.3d 1358, 1364 (Fed. Cir. 2002). We discern no error here in the AJ's treatment of these sworn statements.

Finally, Mr. Corpus argues that the AJ failed to consider the *Douglas* factors. *See* Pet. Br. at 27. These are the 12 factors articulated in *Douglas v. Veterans Administration,* 5 M.S.P.B. 313 (1981), which agencies are to consider when determining whether a penalty, such as removal, is reasonable. While *Douglas* factors are pertinent to Mr. Corpus' appeal of his removal (which is not before us), they are not pertinent to the IRA appeal Mr. Corpus has presented to us.

## IV

For the foregoing reasons, we affirm the Board's denial of corrective action.

**AFFIRMED**

Costs

No costs.